```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
S.M.,                                : 12 Civ. 4679 (ER) (JCF)
                                     :
               Plaintiff,            :        MEMORANDUM
                                     :        AND  ORDER
                                     :
     - against -                     :
                                     :
OXFORD HEALTH PLANS (NY), INC.,      :
a/k/a OXFORD HEALTH INSURANCE,       :
INC., OXFORD HEALTH PLANS LLC,       :
UNITEDHEALTHCARE SERVICES, INC.,     :
and UNITEDHEALTH GROUP               :
INCORPORATED,                        :
                                     :
               Defendants.           :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., the plaintiff seeks federal court review of a 2011 denial of coverage for the drug Gamunex by Oxford Health Plans (NY), Inc. ("Oxford").  The plaintiff has moved to compel discovery from Oxford of five Individual Authorization Reports: for the drug Rituxan in 2011, 2012, and 2013 and for Gamunex in 2012 and 2013.

Background

The plaintiff, known in this case by the initials S.M. pursuant to a protective order, was diagnosed with non-Hodgkin's lymphoma in September 2008.  (Memorandum of Law in Support of Plaintiff's Motion to Compel Production of Documents ("Pl. Memo.") at 1).  She enrolled in Oxford's Freedom Plan Metro, an employee welfare benefit plan under ERISA, in September 2010.  (Defendants' Memorandum in Opposition to Plaintiff's Motion to Compel Production

of Documents ("Def. Memo.") at 2).   On September 15, 2011, S.M. requested that Oxford cover one year of treatment with Gamunex, an intravenous immunoglobin treatment that helps fight against infection, as prescribed by her treating physician. (Def. Memo. at 4).   At the time, she was also being treated with Rituxan, a form of chemotherapy, which was covered by Oxford.   (Pl. Memo. at 2).

Oxford's assigned Medical Director, Dr. Bruce Lundblad, reviewed the claim for Gamunex and denied it as not medically necessary. (Def. Memo. at 4).   On September 16, 2011, Oxford sent the plaintiff a letter describing the basis for the denial.   (Def. Memo. at 5).   After the plaintiff appealed the denial, Dr. Lundblad spoke with Dr. Janet Cuttner, the plaintiff's treating physician, regarding the plaintiff's treatment.   (Def. Memo. at 5).   Dr. Lundblad then changed his initial determination and granted three months of coverage for Gamunex.   (Def. Memo. at 5-6).

In November 2011, the plaintiff requested that her coverage be extended until September 2012.   (Def. Memo. at 6).   Oxford requested additional information on the plaintiff's then-current medical condition, and Dr. Cuttner provided recent progress notes, lab test results, and results from a CT scan.   (Def. Memo. at 6). Dr. Lundblad requested further information, and Dr. Cuttner sent an additional letter describing the plaintiff's current condition. (Def. Memo. at 7).   Dr. Lundblad then denied the extension of coverage as not medically necessary.   (Def. Memo. at 7).   After sending notice of the determination, Dr. Lundblad contacted Dr. Cuttner once again.   (Def. Memo. at 8).   However, the resulting

2

communications did not change Dr. Lundblad's determination. (Def. Memo. at 8). Following the denial, the plaintiff pursued an expedited internal review and an external appellate review. (Def. Memo. at 9).

The plaintiff contends that this pattern of changing determinations is evidence of Oxford's desire "to arrive at a results-driven denial of coverage." (Pl. Memo. at 1). She further argues that Dr. Lundblad, a former family practitioner, was "stunningly unqualified" to determine whether Gamunex was medically necessary and alleges that Oxford deliberately asked him to review the claim in order to pave the road to denial. (Pl. Memo. at 2, 4, 10). Oxford granted the plaintiff's subsequent claims for Gamunex coverage in 2012 and 2013. (Pl. Memo. at 2).

A. <u>Relevant Procedural History</u>

In September 2013, the plaintiff requested permission to conduct limited discovery, in particular the deposition of Dr. Lundblad. (Def. Memo. at 11). The plaintiff sought to depose Dr. Lundblad on three topics: "(1) the process Oxford followed in changing its medical determinations regarding [the] [p]laintiff's entitlement to Gamunex; (2) Oxford's contracts with Dr. Lundblad; and (3) the number of non-Hodgkin's lymphoma patients denied Gamunex nationwide." (Def. Memo. at 11). Following a hearing, the Court granted the plaintiff's request but limited Dr. Lundblad's deposition to the first topic. (Transcript of Hearing dated Oct. 1, 2013, at 30-31). Specifically, the Honorable Edgardo Ramos, U.S.D.J., allowed the plaintiff to depose Dr. Lundblad on Oxford's

3

policies and processes during the time period stretching through "the initial denial, the subsequent grant, and then the later denial some three months later." (Tr. at 30).

At his deposition, Dr. Lundblad described the clinical information he considered when making his initial denial, the decision to grant three months coverage, and the final denial. Dr. Lundblad testified that he was unaware that the plaintiff was taking Rituxan when she requested coverage for Gamunex. (Pl. Memo. at 5; Def. Memo. at 13). He further stated that he did not believe that Rituxan was relevant to his determination regarding Gamunex. (Pl. Memo. at 5, 7-8). The plaintiff contends that further discovery is warranted because Dr. Lundblad's testimony was primarily "notable for what he did not know." (Pl. Memo. at 2). In particular, S.M. wants to determine whether the requested records "address the interplay between Rituxan and Gamunex, as the side-effects of Rituxan bear directly on S.M.'s need for Gamunex," and why Dr. Lundblad did not have this information at his disposal. (Pl. Memo. at 2).

In January 2014, the plaintiff twice requested the production the Individual Authorization Reports[1] at issue: those authorizing coverage for Rituxan in 2011, 2012, and 2013 and Gamunex in 2012 and 2013. (Pl. Memo. at 2; Def. Memo. at 1). The defendants objected to the requests on the grounds that the documents are

---

[1] An Individual Authorization report contains the plaintiff's diagnostic information, medical review comments, clinical notes, the Medical Director's review notes, and action items. (Pl. Memo. at 1 n.3).

beyond the administrative record and are irrelevant. (Def. Memo. at 1). S.M. argues that the requested discovery is encompassed within Judge Ramos' order allowing for the deposition of Dr. Lundblad on "the process Oxford followed in repeatedly changing its medical determinations." (Pl. Memo. at 2).

Discussion

A. Legal Standard

ERISA does not mandate a particular standard of review; rather, "the terms of the plan documents determine whether the court should apply an arbitrary and capricious or a de novo standard of review." Hamill v. Prudential Insurance Co. of America, No. 11 CV 1464, 2012 WL 6757211, at *2 (E.D.N.Y. Sept. 28, 2012), report and recommendation adopted, 2013 WL 27548 (E.D.N.Y. Jan. 2, 2013); see Fay v. Oxford Health Plan, 287 F.3d 96, 103-04 (2d Cir. 2002). The standard of review, in turn, has implications for the scope of discovery. Thus, a discussion of the applicable ERISA standard is often "instructive in establishing the scope of discovery," even if it has not yet been definitively established. Yasinoski v. Connecticut General Life Insurance Co., No. 07 CV 2573, 2009 WL 3254929, at *3 (E.D.N.Y. Sept. 30, 2009); Trussel v. Cigna Life Insurance Co. of New York, 552 F. Supp. 2d 387, 389-90 (S.D.N.Y. 2008).

Where a plan grants discretion to its administrator, the challenged decision is reviewed under an arbitrary and capricious standard. See Pepe v. Newspaper and Mail Deliveries'-Publishers' Pension Fund, 559 F.3d 140, 146 (2d Cir. 2009); Alberigo v.

Hartford, 891 F. Supp. 2d 383, 395 (E.D.N.Y. 2012). Oxford asserts that this is the appropriate standard here. (Def. Memo. at 14). Under this deferential standard, the presumption is that review is limited to the record in front of the claims administrator. See, e.g., Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995). However, where there exists an issue -- such as conflict of interest -- "distinct from the reasonableness of the plan administrators' decision, the district court will not be confined to the administrative record." Trussel, 552 F. Supp. 2d at 390 (internal quotation marks omitted) (collecting cases); see also Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105, 108 (2008) (finding that courts "should consider" evidence of financial conflict of interest as factor in arbitrary and capricious review). Courts then require parties to show "good cause" to consider additional evidence. See Muller v. First Unum Life Insurance, 341 F.3d 119, 125 (2d Cir. 2003); Schrom v. Guardian Life Insurance Co. of America, No. 11 Civ. 1680, 2012 WL 28138, at *3 (S.D.N.Y. Jan. 5, 2012); Puri v. Hartford Life & Accident Insurance Co., 784 F. Supp. 2d 103, 105 (D. Conn. 2011) (citing Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 631 (2d Cir. 2008) and Locher v. Unum Life Insurance Co. of America, 389 F.3d 288, 293-94 (2d Cir. 2004)). The decision to admit evidence outside the record upon a showing of good cause rests within the discretion of the court. See Biomed Pharmaceuticals, Inc. v. Oxford Health Plans (N.Y.), Inc., 831 F. Supp. 2d 651, 658-59 (S.D.N.Y. 2011); Puri, 784 F. Supp. 2d at 105.

Good cause to consider extrinsic evidence may be found when the administrator operates under a demonstrated conflict of interest or employs flawed procedures in arriving at claim determinations.  <u>Biomed</u>, 831 F. Supp. 2d at 658-59 (among other considerations, insurer's "decision to twice reverse its position with respect to the Patient's benefits" supported good cause to consider evidence beyond record); <u>see also Locher</u>, 389 F.3d at 295-96 (discovery permitted when insufficient review procedures create "greater opportunities for conflicts of interest"); <u>DeFelice v. American International Life Assurance Co. of New York</u>, 112 F.3d 61, 67 (2d Cir. 1997).  "Permissible inquiries that fall outside the bounds of the administrative record can include, but are not limited to, 'the criteria of review by the administrator; . . . the factual basis for the defendant's decision regarding benefits; . . . the competent and complete evaluation of medical records; . . . and the physician's report and testimony,' when, of course, good cause is demonstrated."  <u>Ramsteck v. Aetna Life Insurance Co.</u>, No. 08 CV 0012, 2009 WL 1796999, at *8 (E.D.N.Y. June 24, 2009) (alterations in original) (quoting <u>Reittinger v. Verizon Communications, Inc.</u>, No. 1:05-CV-1487, 2006 WL 3327676, at *3 n.2 (N.D.N.Y. Nov. 15, 2006)).  However, the decision whether to consider any outside evidence is not before the court, only whether discovery of such evidence is warranted.

This entails a distinct inquiry, as parties seeking discovery "need not make a full good cause showing."  <u>Rubino v. Aetna Life Insurance Co.</u>, No. 07 CV 377, 2009 WL 910747, at *4 (E.D.N.Y. March

31, 2009) (internal quotation marks omitted); Tretola v. First Unum Life Insurance Co., No. 13 Civ. 231, 2013 WL 2896804, at *1 (S.D.N.Y. June 13, 2013); Burgio v. Prudential Life Insurance Co. of America, 253 F.R.D. 219, 230 (E.D.N.Y. 2008).  The party seeking discovery must instead show that the requested discovery is "reasonably likely" to "satisfy the good cause requirement." Schrom, 2012 WL 28138, at *3; McDonnell v. First Unum Life Insurance Co., No. 10 Civ. 8140, 2011 WL 5301588, at *3 (S.D.N.Y. Nov. 3, 2011); Yasinowski, 2009 WL 3254929, at *5; Burgio, 253 F.R.D. at 230-31 (collecting cases). But see Joyner v. Continental Casualty Co., 837 F. Supp. 2d 233, 242 (S.D.N.Y. 2011) (finding imposition of "reasonable chance that discovery will lead to good cause" standard unwarranted because too strict).  This standard is "far less stringent than the standard for actually considering that outside evidence." Ramsteck, 2009 WL 1796999, at *8 n.3; Trussel, 552 F. Supp. 2d at 390-91.  This is so because merely obtaining the information is no guarantee it will ultimately be considered by the court.  Even "[i]f discovery is allowed, the plaintiff [must] then apply to the district judge for a determination as to whether [he] will expand the record to include information that discovery yielded, the nature of which is not yet known." Burgio, 253 F.R.D. at 229 (internal quotation marks omitted).

A plan administrator is considered conflicted when it both evaluates and pays benefits claims.  See Glenn, 554 U.S. at 112; Tretola, 2013 WL 2896804, at *1.  However, a structural conflict of interest is not sufficient by itself to support good cause to allow

8

discovery beyond the record.  Rubino, 2009 WL 910747, at *4-5.  The plaintiff must also provide case-specific allegations tending to show a conflict of interest.  See Quinones v. First Unum Life Insurance Co., No. 10 Civ. 8444, 2011 WL 797456, at *2 (S.D.N.Y. March 4, 2011) (requiring plaintiff make "specific factual allegations" in support of discovery request); Puri, 784 F. Supp. 2d at 106; Baird v. Prudential Insurance Co. of America, No. 09 Civ. 7898, 2010 WL 3743839, at *9 (S.D.N.Y. Sept. 24, 2010) ("[A] party seeking to conduct discovery outside the administrative record must allege more than a mere conflict of interest." (internal quotation marks omitted)).  Nonetheless, by instructing that an administrator's conflict forms part of the court's analysis under the arbitrary and capricious standard, the Supreme Court in Glenn "invited discovery relating to any such conflict, since much of the relevant information would not have been part of the record."  Schrom, 2012 WL 28138, at *4; see also Durakovic v. Building Services 32 BJ Pension Fund, 609 F.3d 133, 139 (2d. Cir. 2010) ("The weight properly accorded a Glenn conflict varies in direct proportion to the likelihood that the conflict affected the benefits decision." (internal quotation marks and brackets omitted).

    B. Application

    The parties dispute whether the plaintiff's discovery requests fall within the scope of discovery articulated by Judge Ramos in his October 1, 2013 order.  The plaintiff argues that as the order focused on Oxford's processes, not specifically Dr. Lundblad's, the

requested authorization reports are relevant and will shed light on Dr. Lundblad's previous decisions. (Pl. Memo. at 2, 7-8). The defendants counter that Judge Ramos limited the deposition to the time period involved in the ultimately adverse 2011 determination, and that the issue of documents beyond the administrative record was not raised at the hearing. (Def. Memo. at 12, 20-21). Because S.M. has independently shown a reasonable chance that the requested reports will support good cause, I need not divine the precise scope of Judge Ramos' prior order.

S.M.'s factual allegations supporting discovery go beyond structural conflict of interest. The plaintiff's theory of the case, at least in part, is that Oxford deliberately chose a non-specialist Medical Director and walled him off from pertinent information within Oxford's possession (such as the 2011 Rituxan coverage). (Pl. Memo. at 2, 5, 7-8). S.M. was undergoing treatment with Rituxan at the time she made her Gamunex coverage claim, although this information was not considered by Dr. Lundblad. (Pl. Memo. at 2, 5, 7-8). The plaintiff asserts that the requested reports may contain information regarding the interplay between Gamunex's immune-boosting purpose and Rituxan's immune-suppressant side effects. (Pl. Memo. at 5, 7-8). Through these allegations, the plaintiff has established that there is a reasonable chance that the 2011 Rituxan authorization report, which existed at the time of the challenged 2011 Gamunex denial, may support good cause to admit evidence outside the administrative record. Although the defendants contend that this information is

irrelevant as Dr. Lundblad explicitly testified that he would not have found Rituxan treatment relevant to Gamunex's medical necessity (Def. Memo. at 13, 16), this is nonetheless information that may reveal more about the procedure by which Oxford handled S.M.'s claim.  As such, it is within the bounds of permissible discovery.

The defendants also assert that the remaining authorizations are irrelevant because they post-date Dr. Lundblad's decision. (Def. Memo. at 19-20).  In some cases, it is true that treatment notes "made after [the administrator's] review had been completed" may have "little independent probative value." Muller, 341 F.3d at 125-26 (affirming district court's finding of no good cause to admit additional evidence).  However, S.M. is seeking discovery here, not actual expansion of the administrative record, and the threshold is correspondingly lower.  There is a demonstrated pattern of changing determinations of medical necessity that extends beyond the 2011 denial -- whether or not justified, as the defendants contend -- that bolsters the allegations of a conflict of interest.

It is therefore not, as Oxford contends, "temporally illogical" to allow discovery of the 2012 and 2013 Rituxan and Gamunex reports.  (Def. Memo. at 20).  These reports may help determine whether the record upon which Dr. Lundblad acted in 2011 was accurate and complete, or whether there were substantial deficiencies.  See Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94, 104 (W.D.N.Y. 2000) ("[A]s the arbitrary and capricious

standard requires courts to scrutinize, although deferentially, decisions by plan fiduciaries for lack of reasonableness, including the absence of substantial evidence, such deficiencies in the administrative review function can be significantly illuminated through the reasonable exercise of standard discovery . . . ."). Similarly, if the reports contain identical information as that before Dr. Lundblad in 2011, but only considered by a different Medical Director, this may also support the inference that a conflict of interest affected the 2011 denial.  On the other hand, the requested reports may be a double-edged sword for the plaintiff, if they support Oxford's position that S.M.'s condition had changed enough to justify Gamunex coverage in 2012 and 2013. In any event, the plaintiff's allegations suffice to establish a reasonable chance that the reports may satisfy the good cause requirement.

In addition, as highlighted by the plaintiff, the "defendants' own medical policy requires Oxford to provide S.M.'s Individual Authorization Reports to her."  (Pl. Memo. at 3, 6; E-Mail of Gabriel Berg dated Jan. 29, 2014, attached as part of Exh. 4 to Declaration of Gabriel Berg dated Feb. 7, 2014 ("Berg Decl.")).  In response to the plaintiff's initial request for the reports, Oxford suggested that S.M. ask for the documents pursuant to the procedure outlined in the policy.  (Pl. Memo. at 3, 6; E-mail of John Kapacinskas dated Feb. 2, 2014, attached as part of Exh. 4 to Berg Decl.).  As plaintiff's counsel made clear that producing the documents was not tantamount to stipulating their admissibility

(Pl. Memo. at 3; E-mail of Gabriel Berg dated Feb. 3, 2014, attached as part of Exh. 4 to Berg Decl.), and assuming the plaintiff indeed had the right to such information under the plan, it is puzzling why defense counsel did not simply produce the reports.

Conclusion

For the above reasons, the plaintiff's motion (Docket no. 45) is granted, and Oxford shall produce the plaintiff's Individual Authorization Reports for Rituxan in 2011, 2012, and 2013, and for Gamunex in 2012 and 2013.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       April 1, 2014

Charles Matays, Esq.
The Law Offices of Charles Matays PLLC
271 Madison Ave.
New York, NY 10016

Gabriel A. Berg, Esq.
Kennedy Berg LLP
401 Broadway, Suite 1900
New York, NY 10013

13

Richard A. Ross, Esq.
John F. Kapacinskas, Esq.
Erin M. Secord, Esq.
Fredrikson & Byron, P.A.
200 South Sixth St.
Suite 4000
Minneapolis, MN 55402-1425

14